1   DANIEL L. WARSHAW (Bar No. 185365)
        dwarshaw@pswlaw.com
2   **PEARSON, SIMON & WARSHAW, LLP**
3   15165 Ventura Boulevard, Suite 400
    Sherman Oaks, California 91403
4   Telephone: (818) 788-8300
    Facsimile:  (818) 788-8104
5
6   HASSAN A. ZAVAREEI (Bar No. 181547)
        hzavareei@tzlegal.com
7   **TYCKO & ZAVAREEI LLP**
8   1828 L Street NW, Suite 1000
    Washington, D.C. 20036
9   Telephone: (202) 973-0900
    Facsimile: (202) 973-0950

10  *Attorneys for Plaintiff and the Proposed Class*

11  *[Additional counsel appears on signature page]*

12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15  KIESHA LOWE, individually and on behalf    CASE NO.
    of all others similarly situated,
16                                             **CLASS ACTION COMPLAINT**
                        Plaintiff,
17                                             **DEMAND FOR JURY TRIAL**
    v.
18
    APPLE INC., a California corporation,
19
                        Defendant.
20

21

22

23

24

25

26

27

28

949472.1

Plaintiff Kiesha Lowe ("Plaintiff Lowe"), individually and on behalf of all other persons similarly situated, and through her attorneys of record, alleges the following against Apple Inc. ("Apple" or "Defendant"), based upon personal knowledge with respect to herself, on information and belief derived from investigation of counsel, and review of public documents as to all other matters.

## INTRODUCTION

1. This is a class action arising from Apple's profiting from illegal gambling games developed by Zynga, Inc. ("Zynga") and offered, sold, and distributed by Apple through its App Store for consumers to download and play. Apple offers, sells, and distributes casino-style slot machines, casino-style table games, and other common gambling games to consumers through its App Store, which, for the reasons set forth herein, constitutes illegal gambling pursuant the law of various states.

## PARTIES

2. Plaintiff is an adult citizen and resident of the State of Mississippi.

3. Apple Inc. is a California corporation with its principal place of business in Cupertino, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because putative class members are citizens of a different state than Defendant.

5. This Court has personal jurisdiction over Defendant because it is authorized to and regularly conducts business in California and its principal place of business is in California.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

/ / /

## FACTUAL ALLEGATIONS

7. Apple designs, manufactures, and markets smartphones, personal computers, tablets, wearables and accessories, and sells a variety of related services.

8. As part of the related services that it sells, Apple operates various platforms, including its App Store. The App Store is a digital distribution platform, developed and maintained by Apple, for mobile applications ("Apps") on its iOS & iPadOS operating systems. The App Store allows consumers to browse and download Apps developed with Apple's iOS Software Development Kit. Apps can be downloaded on the iPhone smartphone, the iPod Touch handheld computer, or the iPad tablet computer, and some can be transferred to the Apple Watch smartwatch or to 4th-generation or newer Apple TVs as extensions of iPhone Apps.

9. The Apps sold and delivered by Apple through the App Store are developed by third parties (*i.e.*, developers). As of October 2020, the App Store features around 1.96 million Apps available for download.[1]

10. Developers and Apple have several options for monetizing an App, including the "Freemium Model," which is utilized by Apple and Apps developed by Zynga that are the subject of this lawsuit.[2] Under the Freemium Model, consumers can download the App for free (*i.e.*, "free-to-play" Apps), but consumers are then offered optional additional in-app features that require payments (*i.e.*, "in-app purchases").[3]

11. Apple provides in-app payment processing services to iPhone app developers, including Zynga, and consumers through the App Store.[4]

12. Apple consumers who want to purchase an App or make in-app purchases through the App Store must pay money directly to Apple, which provides the payment interface. Apple

---

[1] *See* https://www.statista.com/statistics/276623/number-of-apps-available-in-leading-app-stores/ (last visited February 9, 2021).

[2] *See* https://developer.apple.com/app-store/business-models/ (last visited January 29, 2021); https://support.apple.com/en-us/HT202023 (last visited January 29, 2021).

[3] *Id.*

[4] https://www.cnbc.com/2020/07/22/apple-defends-app-stores-30percent-cut-ahead-of-tim-cook-testimony.html (last visited December 23, 2020) (hereinafter "CNBC").

1   consumers must create an Apple ID and register a valid method of payment to make payments to

2   Apple for any purchases made through the App Store (including in-app purchases).[5]

3         13.    Likewise, Apple mandates that App developers who offer and distribute their Apps

4   in the App Store must process all payments for Apps and in-app purchases through Apple.[6]  Apple

5   takes a commission of up to 30% of all revenue generated by sales of Apps in its App Store and

6   in-app purchases made on Apps obtained through the App Store.[7]  Apple characterizes the

7   commission as a fee for distribution of the App and the cost of running the App Store.  The

8   developer receives the remaining 70%.[8]

9         14.    The Apps referenced herein could not be downloaded by Apple consumers, and

10  Apple consumers would not be able to make in-app purchases, without Apple's offering and

11  distributing of the Apps (and selling of coins through in-app purchases) through the App Store.

12        15.    Apple also provides marketing guidance, tools, promotional offers, and more to

13  help drive discovery of Apps and in-app purchases.[9]  For example, Apple features select Apps on

14  the App Store.[10]

15        16.    When considering apps to feature, Apple's editors look for high-quality apps across

16  all categories, with a particular focus on new apps and apps with significant updates. There is no

17  paid placement or checklist of requirements for apps the App Store features.[11]

18

19

---

20  [5]    *See* https://support.apple.com/en-us/HT202631 (last visited January 29, 2021).

21  [6]    Damien Geradin and Dimitrios Katsifis, *The Antitrust Case Against the Apple App Store*

22  (April 22, 2020), at 13, available at
https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3583029 (last visited January 29, 2021)

23  (hereinafter "Geradin and Katsifis"); *see also* https://developer.apple.com/in-app-purchase/ (last visited January 29, 2021).

24  [7]    *See* https://www.cnbc.com/2020/11/18/apple-will-cut-app-store-fees-by-half-to-15percent-

25  for-small-developers.html (last visited January 29, 2021).

26  [8]    Geradin and Katsifis at 18-19, *supra* note 3.

     [9]    *See* https://developer.apple.com/app-store/promote/ (last visited February 8, 2021).

27  [10]  *Id.*

28  [11]  https://developer.apple.com/app-store/discoverability/ (last visited February 8, 2021).

CLASS ACTION COMPLAINT

17.     Zynga-developed Apps such as Game of Thrones Slots and Zynga Poker are featured in the App Store.



18.     "[O]n average, the Apple App Store drives 50% of all app installs. Of that, roughly 21% of installs come from users who discover and install apps through browsing the featured apps or sifting through app categories."[12]

19.     Apple is also responsible, in part, for the creation or development of its Apps. Apple encourages App developers to incorporate Apple's "cutting-edge Apple technologies" into their Apps "to create useful and engaging user experiences."[13] For example, Apple urges developers to "[i]ntegrate with Siri to let users can get things done using just their voice, use Apple Pay to sell a variety of items directly from within your app, enable your apps to store app data in iCloud, and much more."[14] Apple contributes materially to the illegality of the casino-style apps referenced herein by engaging in the foregoing conduct with Zynga.

**Casino-Style Apps Offered Through the App Store**

20.     Apple permits and facilitates illegal gambling by operating as an unlicensed casino.

---

[12]   *See* https://www.storemaven.com/ios-12-and-app-store-personalization/?trafficSource=newsletter&cmpn=ios12updates (last visited February 8, 2021).

[13]   *See* https://developer.apple.com/programs/ (last visited February 9, 2021).

[14]   *Id.*

21. Apple sells, offers, and distributes several free-to-play casino-style games (*i.e.*, slot machines and casino-style table games) developed by Zynga through the App Store ("Zynga Casino Apps") for consumers to download and play, including, but not limited to, 101 YüzBir Okey Plus, Bid Whist Plus, Black Diamond Casino Slots, Game of Thrones Slots Casino, Gin Rummy Plus, Hit it Rich! Slots, Okey Plus, Solitaire, Spades Plus, Willy Wonka Slots, Wizard of Oz Slots, Zero21 Solitaire, and Zynga Poker.

22. When a consumer downloads and initially opens a Zynga Casino App, the consumer is given free "coins" or "chips" to start with, *i.e.*, 100,000 or 1,000,000 to play the game. The Zynga Casino Apps work essentially like a casino slot machine or other Las Vegas-style games like blackjack, roulette, poker, keno, bingo, and other card and gambling games. A loss results in a loss of coins or chips, but the consumer has an opportunity to win additional coins or chips. Ultimately, the consumer will run out of coins or chips and will be prompted to use real money to purchase additional coins or chips for the chance to continue playing the game.

23. Consumers do not have the ability to collect actual cash as a result of "winning" games, but they do have the ability to win and therefore acquire more playing time.

24. Paying money in a game for a chance to win more playing time violates the anti-gambling laws of the twenty-five states that are at issue in this case. *See* Ala. Code § 13A-12-20 (Alabama); Ark. Code Ann. § 16-118-103 (Arkansas); Conn. Gen. Stat. § 53-278a (Connecticut); OCGA § 16-12-20 (Georgia); 720 ILCS 5/28-1 (Illinois); IC §35-45-5-1 (Indiana); KRS 528.101 (Kansas); Mass. Gen. Laws ch. 137, § 1 (Massachusetts); MN ST § 609.75 (Minnesota); MS ST § 87-1-5 (Mississippi); Mo. Rev. Stat. § 572.010 (Missouri); MT Code § 23-5-112(14) (Montana); N.H. Rev. Stat. § 647.2 (New Hampshire); N.J. Stat. § 2C:37-1 (New Jersey); N.M. Stat. § 30-19-1 (New Mexico); N.Y. Penal L. 225.00 (New York); Ohio Rev. Code § 2915.01 (Ohio); Or. Rev. Stat. § 167.117 (Oregon); S.C. Code § 32-1-10 (South Carolina); S.D. Codified Laws § 22-25A (South Dakota); Tenn. Code § 39-17-501 (Tennessee); 13 V.S.A. § 2141 (Vermont); Va. Code § 18.2-325 (Virginia); Wash. Rev. Code § 9.46.010 (Washington); W. Va. Code §61-10-5 (West Virginia).

/ / /

25.     In 2019, people in the United States lost approximately $3.5 billion playing "free-to-play" Apps like the Zynga Casino Apps.[15]  Despite the fact these Zynga Casino Apps do not offer an opportunity to win real money or prizes, the money spent by consumers to purchase additional coins or chips to continue playing the Apps can lead to devastating consequences for those who get addicted.[16]

26.     A study analyzing "free-to-play" casino-style Apps stated:

> [Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (e.g., employment, education, income) with online gamblers. Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games. Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences with gambling.
>
> . . .
>
> According to [another study], the purchase of virtual credits or virtual items makes the activity of [free-to-play] casino gaming more similar to gambling. Thus, micro-transactions[17] may be a crucial predictor in the migration to online gambling, as these players have now crossed a line by paying to engage in these activities. Although, [sic] only 1–5% of [free-to-play] casino gamers make micro-transactions, those who purchase virtual credits spend an average of $78. Despite the limited numbers of social casino gamers purchasing virtual credits, revenues from micro-transactions account for 60% of all [free-to-play] casino gaming revenue. Thus, a significant amount of revenue is based on players' desire to purchase virtual credits above and beyond what is provided to the player in seed credits.[18]

---

[15] *See* https://www.king5.com/article/life/wellness/social-casino-free-to-play-gambling-addiction-help/281-e79beef2-9ca6-4d9d-9e92-b99042f1d1cc (last accessed January 28, 2021) (hereinafter, "King5").

[16] *Id.*

[17] "Microtransactions, often abbreviated as MTX, are a business model where users can purchase virtual goods with micropayments. Microtransactions are often used in free-to-play games to provide a revenue source for the developers." *See* https://en.wikipedia.org/wiki/Microtransaction (last visited February 9, 2021).

[18] Hyoun S. Kim, Michael J. A. Wohl, *et al.*, *Do Social Casino Gamers Migrate to Online Gambling? An Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014), available at http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf (citations omitted).

27.     Most of the revenue earned from these casino-style Apps (*i.e.*, 80-90%) is made from a small portion (*i.e.*, about 3%) of their players, who are specifically targeted because of the large amounts they will spend.[19]

28.     Nate Halverson, a journalist with Reveal from the Center for Investigative Reporting said:

> They're using artificial intelligence to target those specific players who, like [a woman] I reported on will spend $400,000. She didn't have $400,000.
>
> In a regular casino, they would have seen that she didn't have the income to be spending $400k. Further, she asked them nearly a dozen times to cut her off, told them she had a problem, that she couldn't stop spending. And what did they do? They just gave her free chips and encouraged her to keep spending. That wouldn't happen in a real casino. This is a wild west; this is a lawless land.[20]

29.     Governments across the world have acted to limit the availability of micro-transaction-based games of chance (like the Zynga Casino Apps) due to their similarity to games of chance found in actual casinos.[21]  Regrettably, such games have avoided regulation in the United States, resulting in thousands of consumers spending millions of dollars to become addicted to these unlawful games that they downloaded from the App Store, while Apple earns a substantial profit.

30.     Since Apple is responsible, in part, for the creation or development of the Zynga Casino Apps and provides the *sole* means by which Zynga Casino App developers can offer, distribute, and sell their Zynga Casino Apps to Apple consumers (i.e., through the App Store), Apple functions as an information content provider for the subject Zynga Casino Apps.

---

[19]   King5, *supra* note 15.

[20]   *Id.*

[21]   In late August 2014, South Korea began regulating "social gambling" games, including games similar to the Zynga Casino Apps, by "ban[ning] all financial transactions directed" to the games. PokerNews.com, *Korea Shuts Down All Facebook Games In Attempt To Regulate Social Gambling | PokerNews*, https://www.pokernews.com/news/2014/09/korea-shuts-down-facebook-games-19204.htm (last visited Feb. 11, 2019). Similarly, "the Maltese Lotteries and Gambling Authority (LGA) invited the national Parliament to regulate all digital games with prizes by the end of 2014." *Id.*

31.     Accordingly, Apple actively enables, permits, promotes, and profits from illegal gambling.

### The History of Civil Remedy Statutes for Recovery of Gambling Losses

32.     Purportedly, "[i]n the seventeenth and eighteenth centur[ies], gambling among the British gentry was rampant."[22] Problems were created for England's land-based aristocracy because of large transfers of wealth or property related to gambling.  This problem apparently led the English in 1710 to adopt "[a]n Act for the better preventing of excessive and deceitful gaming," 9 Anne, ch. 14 (1710), which is known as the *Statute of Anne* (named for Britain's then reigning Queen).[23]

33.     "England's *Statute of Anne*…provided for a recovery action by the losing gambler, or any other person on the gambler's behalf, for gambling debts already paid."[24] It stated, in pertinent part, that:

> [A]ny Person . . . who shall . . . by playing at Cards, Dice, Tables, or other Game
> or Games whatsoever, or by betting on the Sides or Hands of such as do play any
> of the Games aforesaid, lose to any . . . Person . . . so playing or betting in the whole,
> the Sum or Value of ten Pounds, and shall pay or deliver the same or any Part
> thereof, the Person . . . losing and paying or delivering the same, shall be at Liberty
> within three Months then next, to sue for and recover the Money or Goods so lost,
> and paid or delivered or any Part thereof, from the respective Winner . . . thereof,
> with Costs of Suit, by Action of Debt . . . .[25]

34.     The twenty-five states at issue here – Alabama, Arkansas, Connecticut, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Mississippi, Missouri, Montana, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, South Carolina, South Dakota,

---

[22]   Ronald J. Rychlak, *The Introduction of Casino Gambling: Public Policy and the Law*, 64 Miss. L.J. 291, 296 n.32 (1995).

[23]   State of Tennessee Office of the Attorney General, *Applicability of Statute of Anne Provisions Regarding Gambling*, Opinion No. 04-046 (March 18, 2004), available at https://www.tn.gov/content/dam/tn/attorneygeneral/documents/ops/2004/op04-046.pdf (last visited January 28, 2021).

[24]   Joseph Kelly, *Caught in the Intersection Between Public Policy and Practicality: A Survey of the Legal Treatment of Gambling-Related Obligations in the United States*, 5 Chap. L. Rev. 87 (2002).

[25]   An Act for the Better Preventing of Excessive and Deceitful Gaming, 1710, 9 Ann. c. 14, § 2 (Eng.).

1 Tennessee, Vermont, Virginia, Washington, and West Virginia – have enacted civil remedy

2 statutes designed to curtail excessive gambling losses based on legal principals adopted from the

3 *Statute of Anne*.

4     35.     These states have similar statutes that prohibit profiting from unlawful gambling

5 activity and provide a statutory civil cause of action to recover money paid and lost due to

6 gambling: Ala. Code § 8-1-150; Ark. Code Ann. § 16-118-103; Conn. Gen. Stat. § 52-554; OCGA

7 § 13-8-3; 720 ILCS 5/28-8; IC 34-16-1-2; KRS 372.020; Mass. Gen. Laws ch. 137, § 1; MN ST §

8 541.20; MS ST § 87-1-5; Mo. Rev. Stat. § 434.030; MT Code § 23-5-131; N.H. Rev. Stat. § 338:3;

9 N.J. Stat. § 2A:40-5; N.M. Stat. § 44-5-1; N.Y. Gen. Oblig. Law §§ 5-419, 5-421; Ohio Rev. Code

10 § 3763.02; Or. Rev. Stat. § 30.740; S.C. Code § 32-1-10; S.D. Codified Laws § 21-6-1; Tenn.

11 Code § 28-3-106; 9 V.S.A. § 3981; Va. Code § 11-15; Wash. Rev. Code § 4.24.070; and W. Va.

12 Code § 55-9-3 ("Civil Remedy Statutes for Recovery of Gambling Losses").

13                      **Facts Specific to Plaintiff**

14     36.     In late 2015, Plaintiff downloaded a Zynga Casino App, Wizard of Oz Slots, on her

15 iPhone from the App Store.  Plaintiff initially played Wizard of Oz Slots for free, but eventually

16 purchased coins through in-app purchases (paid directly to Apple) so she could continue playing.

17 Plaintiff Lowe purchased coins in increments of $4.99, $9.99, and $19.99 on multiple occasions.

18 In the three (3) years prior to the filing of this Complaint, Plaintiff paid more than $250.00 in coin

19 purchases to Apple to continue playing Wizard of Oz Slots.

20     37.     Accordingly, Plaintiff, on behalf of herself and all others similarly situated, seeks

21 to recover money paid and lost due to gambling on the Zynga Casino Apps pursuant to state law,

22 as set forth herein.

23                      **CLASS ACTION ALLEGATIONS**

24     38.     Pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

25 Civil Procedure, Plaintiff brings this action on behalf of herself and the following Multistate Class

26 and State Classes (collectively "Class"):

27 / / /

28 / / /

**Multistate Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Alabama, Arkansas, Connecticut, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Mississippi, Missouri, Montana, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Vermont, Virginia, Washington, and West Virginia.

**Alabama State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Alabama.

**Arkansas State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Arkansas.

**Connecticut State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Connecticut.

**Georgia State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Georgia.

**Illinois State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Illinois.

**Indiana State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Indiana.

**Kentucky State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Kentucky.

**Massachusetts State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Massachusetts.

**Minnesota State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Minnesota.

/ / /

**Mississippi State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Mississippi.

**Montana State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Montana.

**New Hampshire State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in New Hampshire.

**New Jersey State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in New Jersey.

**New Mexico State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in New Mexico.

**New York State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in New York.

**Ohio State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Ohio.

**Oregon State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Oregon.

**South Carolina State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in South Carolina.

**South Dakota State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in South Dakota.

/ / /

/ / /

**Tennessee State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Tennessee.

**Vermont State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Vermont.

**Virginia State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Virginia.

**Washington State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in Washington.

**West Virginia State Class:**

All persons who paid money to Apple for coins to wager on the Zynga Casino Apps and reside in West Virginia.

39.     Excluded from the Class are Zynga and its officers, directors, legal representatives, successors, subsidiaries, and assigns; Apple itself, any entity in which Apple has controlling interests, and Apple's officers, directors, legal representatives, successors, subsidiaries, and assigns; and any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

40.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

41.     This action has been brought and may be properly maintained on behalf of the Multistate and/or State Classes proposed herein under Rule 23 of the Federal Rule of Civil Procedure and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

42.     Plaintiff reserves the right to amend the Multistate and State Class definitions based upon information learned through discovery.

43.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  While the exact number of class members is unknown to Plaintiff at this time, there are millions of reviews for some Gambling Apps, suggesting that at least hundreds of thousands of people have downloaded and played the subject Zynga Gambling Apps. The members of the Class can be readily identified through Apple's records.

44.     **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class members.  The common questions include, but are not limited to:

a.     Whether Defendant engaged in the conduct alleged herein;

b.     Whether these virtually identical Zynga Casino Apps offered and distributed by Apple for download and for sale of in-app purchases through Defendant's App Store violate the Civil Remedy Statutes for Recovery of Gambling Losses;

c.     Whether gambling for additional playtime constitutes a thing of value under Civil Remedy Statutes for Recovery of Gambling Losses;

d.     Whether Defendant violated the Civil Remedy Statutes for Recovery of Gambling Losses through its active participation in the promotion and sale of in-app purchase through the App Store;

e.     Whether Plaintiff and the Class members are entitled to recover the money they lost on the Zynga Casino Apps under the Civil Remedy Statutes for Recovery of Gambling Losses;

f.     Whether Defendant has been unjustly enriched under applicable state laws; and

g.     Such other common factual and legal issues as are apparent from the allegations and causes of action asserted in the Complaint.

45.     **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same allegedly

1  unlawful conduct and damaged in the same way, *i.e.*, they all lost money to Apple in an effort to
2  win additional playtime on the Zynga Casino Apps.

3      46.    **Adequacy. Fed. R. Civ. P. 23(a)(4).**  Consistent with Rule 23(a)(4), Plaintiff will
4  fairly and adequately represent the Class.  Plaintiff has the best interests of the members of the
5  Class in mind.  Plaintiff has no conflicts of interest with the Class.  Plaintiff's counsel are
6  competent and experienced in litigating class actions, including extensive experience in consumer
7  protection claims. Plaintiff intends to vigorously prosecute this case.

8      47.    **Superiority. Fed. R. Civ. P. 23(b)(3).**  A class action is superior to other available
9  methods for the fair and efficient adjudication of these claims because individual joinder of the
10 claims of all members of the Class is impracticable. Many members of the Class are without the
11 financial resources necessary to pursue this matter. Even if some could afford to litigate claims
12 separately, such a result would be unduly burdensome to the courts in which the individualized
13 cases would proceed. Individual litigation increases the time and expense of resolving a common
14 dispute concerning Defendant's actions toward an entire group of individuals. Class action
15 procedures allow for far fewer management difficulties in matters of this type and provide the
16 unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over
17 the entire controversy by a single judge in a single court.

18     48.    The Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil
19 Procedure because Defendant has acted on grounds generally applicable to the Class, thereby
20 making final injunctive relief and corresponding declaratory relief appropriate with respect to the
21 claims raised by the Class.

22     49.    The Class may also be certified pursuant to Rule 23(b)(3) of the Federal Rules of
23 Civil Procedure because questions of law and fact common to members of the Class will
24 predominate over questions affecting individual members, and a class action is superior to other
25 methods for fairly and efficiently adjudicating the controversy and causes of action described in
26 this Complaint.

27 / / /

28 / / /

**CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF CIVIL REMEDY STATUTES**
**FOR RECOVERY OF GAMBLING LOSSES**

50.     Plaintiff realleges and incorporates the preceding paragraphs, as if fully set forth herein.

51.     Plaintiff brings this claim on behalf of herself and the Multistate Class under the Civil Remedy Statutes for Recovery of Gambling Losses, which are materially uniform in the states of Alabama, Arkansas, Connecticut, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Mississippi, Missouri, Montana, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Vermont, Virginia, Washington, and West Virginia.  In the alternative, Plaintiff bring this action on behalf of each State Class under the Civil Remedy Statute for Recovery of Gambling Losses enacted under the law of each State.

52.     The twenty-five states identified above have enacted the following Civil Remedy Statutes for Recovery of Gambling Losses, all of which are materially similar and were designed to effectuate the states' public policy against gambling.

a.     Ala. Code § 8-1-150(a) ("Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.");

b.     Ark. Code Ann. § 16-118-103(a)(1)(A)(i) ("Any person who loses any money or property at any game or gambling device, or any bet or wager whatever, may recover the money or property by obtaining a judgment ordering the return of the money or property following an action against the person winning the money or property.");

c.     Conn. Gen. Stat. § 52-554 ("Any person who, by playing at any game, or betting on the sides or hands of such as play at any game…loses the sum or value of one dollar in the whole and pays or delivers the same or any part thereof, may, within three months next following, recover from the winner the money or the value of the goods so lost and paid or delivered….");

949472.1

16

1           d.      OCGA § 13-8-3(b) ("Money paid or property delivered upon a gambling

2 consideration may be recovered from the winner by the loser by institution of an action for the

3 same within six months after the loss and, after the expiration of that time, by institution of an

4 action by any person, at any time within four years, for the joint use of himself and the educational

5 fund of the county.");

6           e.      720 ILCS 5/28-8(a) ("Any person who by gambling shall lose to any other

7 person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay

8 or deliver the same or any part thereof, may sue for and recover the money or other thing of value,

9 so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit

10 court…");

11           f.      IC 34-16-1-2 ("If a person, by betting on a game or on the hands or sides of

12 persons playing a game: (1)  loses any money or other property; and (2)  delivers any part of the

13 money or other property; the person may bring a civil action, within one hundred eighty (180)

14 days, to recover the money or other property so lost and delivered.");

15           g.      KRS 372.020 ("If any person loses to another at one (1) time, or within

16 twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or

17 delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any

18 transferee of the winner, having notice of the consideration, by action brought within five (5) years

19 after the payment, transfer or delivery.");

20           h.      Mass. Gen. Laws ch. 137, § 1 ("Whoever, by playing at cards, dice or other

21 game, or by betting on the sides or hands of those gaming, except for gaming conducted in licensed

22 gaming establishments pursuant to chapter 23K, loses to a person so playing or betting money or

23 goods, and pays or delivers the same or any part thereof to the winner, or whoever pays or delivers

24 money or other thing of value to another person for or in consideration of a lottery, policy or pool

25 ticket, certificate, check or slip, or for or in consideration of a chance of drawing or obtaining any

26 money, prize or other thing of value in a lottery or policy game, pool or combination, or other bet,

27 may recover such money or the value of such goods in contract….");

28 / / /

i.      MN ST § 541.20 ("Every person who, by playing at cards, dice, or other game, or by betting on the hands or sides of such as are gambling, shall lose to any person so playing or betting any sum of money or any goods, and pays or delivers the same, or any part thereof, to the winner, may sue for and recover such money by a civil action, before any court of competent jurisdiction.");

j.      MS ST § 87-1-5 ("If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game…or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, with costs.");

k.      Mo. Rev. Stat. Ann. § 434.030 ("Any person who shall lose any money or property at any game, gambling device or by any bet or wager whatever, may recover the same by a civil action.");

l.      MT Code § 23-5-131 ("A person, or the person's dependent or guardian, who, by playing or betting at an illegal gambling device or illegal gambling enterprise, loses money, property, or any other thing of value and pays and delivers it to another person connected with the operation or conduct of the illegal gambling device or illegal gambling enterprise, within 1 year following the person's loss, may: (1) bring a civil action in a court of competent jurisdiction to recover the loss; (2) recover the costs of the civil action and exemplary damages of no less than $500 and no more than $5,000; and (3) join as a defendant any person having an interest in the illegal gambling device or illegal gambling enterprise.");

m.      N.H. Rev. Stat. § 338:3 ("If any person shall receive any money or property, won by him upon any bet or wager as aforesaid, he shall be liable to the person losing it, in an action of assumpsit, trover or other form proper to recover it; and any security given for the payment of such loss shall be void.");

n.      N.J. Stat. § 2A:40-5 ("If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title, and shall pay or deliver the

1  same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person

2  may sue for and recover such money, or the value of such goods, chattels, or other valuable thing,

3  from such winner, or from such depositary, or from such stakeholder, whether the same has been

4  delivered or paid over by such stakeholder or not, in a civil action provided such action is brought

5  within 6 calendar months after payment or delivery.");

6        o.    N.M. Stat. § 44-5-1 ("Any person who shall lose any money or property at

7  any game at cards, or at any gambling device, may recover the same by action of debt, if money;

8  if property, by action of trover, replevin or detinue.");

9        p.    N.Y. Gen. Oblig. Law § 5-419 ("Any person who shall pay, deliver or

10  deposit any money, property or thing in action, upon the event of any wager or bet prohibited,

11  may sue for and recover the same of the winner or person to whom the same shall be paid or

12  delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager,

13  bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder

14  or not, and whether any such wager be lost or not."); § 5-421 ("Every person who shall, by playing

15  at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the

16  sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part

17  thereof, may, within three calendar months after such payment or delivery, sue for and recover the

18  money or value of the things so lost and paid or delivered, from the winner thereof.");

19        q.    Ohio Rev. Code § 3763.02 ("If a person, by playing a game, or by a wager,

20  loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the

21  winner thereof, such person losing and paying or delivering, within six months after such loss and

22  payment or delivery, may sue for and recover such money or thing of value or part thereof, from

23  the winner thereof, with costs of suit.");

24        r.    Or. Rev. Stat. § 30.740 ("All persons losing money or anything of value at

25  or on any unlawful game described in ORS 167.117 (Definitions for ORS 167.108 to 167.164 and

26  464.270 to 464.530), 167.122 (Unlawful gambling in the second degree) and 167.127 (Unlawful

27  gambling in the first degree) shall have a cause of action to recover from the dealer winning the

28

1  same, or proprietor for whose benefit such game was played or dealt, or such money or thing of

2  value won, twice the amount of the money or double the value of the thing so lost.");

3            s.      S.C. Code § 32-1-10 ("Any person who shall at any time or sitting, by

4  playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of

5  such as do play at any of the games aforesaid, lose to any person or persons so playing or betting,

6  in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any

7  part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the

8  money or goods so lost and paid or delivered or any part thereof from the respective winner or

9  winners thereof, with costs of suit, by action to be prosecuted in any court of competent

10  jurisdiction.);

11            t.      S.D. Codified Laws § 21-6-1 ("Any person who shall lose any thing of value

12  at any game, or by betting on any game, may recover the same or the value thereof from any other

13  person playing at the game at which such thing was lost, or from the person with whom the bet

14  was made, or from the proprietor of the place where the game was played, in a civil action, in

15  which such proprietor and all persons engaged in the game may be joined as parties; provided that

16  such action shall have been commenced within six months after the date of such loss.");

17            u.      Tenn. Code § 28-3-106 ("Actions to recover money or goods lost at any

18  kind of gambling or betting, and paid or delivered: (1) If brought by the loser, shall be commenced

19  within ninety (90) days next after such payment or delivery; (2) If brought for the use of the spouse,

20  child or children, or next of kin, within twelve (12) months from the expiration of the ninety (90)

21  days; (3) If by a creditor of the loser, within twenty-four (24) months from the end of the ninety

22  (90) days.").

23            v.      9 V.S.A. § 3981 ("A person who pays money or other valuable thing lost

24  at a game…may recover the value thereof of the person to whom it was paid in a civil action, if

25  commenced within one month from the time of payment.");

26            w.      Va. Code § 11-15 ("Any person who shall, by playing at any game or betting

27  on the sides or hands of such as play at any game, lose within twenty-four hours, the sum or value

28  of five dollars, or more, and pay or deliver the same, or any part thereof, may, within three months

next following, recover from the winner, the money or the value of the goods so lost and paid or delivered, with costs of suit in civil action, either by suit or warrant, according to the amount or value thereof.");

x.    Wash. Rev. Code § 4.24.070 ("All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."); and

y.    W. Va. Code § 55-9-3 ("If any person shall lose to another within twenty-four hours $10 or more, or property of that value, and shall pay or deliver the same, or any part thereof, such loser may recover back from the winner the money or property, or in lieu of the property the value thereof, so lost, by suit in court, or before a justice, according to the amount or value, brought within three months after such payment or delivery….").

53.    The Civil Remedy Statutes for Recovery of Gambling Losses prohibit a person from profiting from gambling activity and provide for the recovery of money paid and lost due to such gambling activity.

54.    By purchasing coins from Apple to wager on the Zynga Casino Apps, Plaintiff and each member of the Multistate Class gambled and lost money within the meaning of the Civil Remedy Statute for Recovery of Gambling Losses.

55.    Apple has profited and continues to profit from gambling activity in violation of the Civil Remedy Statute for Recovery of Gambling Losses by: (1) providing marketing guidance, tools, promotional offers and more to help drive discovery of Zynga Casino Apps and in-app purchases; (2) contributing to the creation and development of Zynga Casino Apps by encouraging Zynga to incorporate Apple technologies into the Apps; and (3) offering and distributing the Zynga Casino Apps through the App Store and selling in-app purchases for the Zynga Casino Apps in exchange for a significant percentage of the money paid and lost by Plaintiff and the members of the Class to gamble using the Zynga Casino Apps.

56.    Plaintiff and the members of the Class are, therefore, entitled to recover from Apple the amounts they lost when gambling on the Zynga Casino Apps through the App Store.

# COUNT II

## UNJUST ENRICHMENT

57.     Plaintiff realleges and incorporates the preceding paragraphs, as if fully set forth herein.

58.     Plaintiff brings this claim on behalf of herself and the Multistate Class under the common law of unjust enrichment, which is materially uniform in the states of Alabama, Arkansas, Connecticut, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Mississippi, Missouri, Montana, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Vermont, Virginia, Washington, and West Virginia.  In the alternative, Plaintiff brings this action on behalf of each State Class under the common law of each State, which is materially uniform in all such States.

59.     As a result of its unlawful conduct described above, Apple has and will continue to be unjustly enriched to the detriment of Plaintiff and Class members by virtue of their purchase of coins from Apple to wager on the Zynga Casino Apps through the App Store.

60.     Apple has profited immensely by providing marketing guidance, tools, and promotional offers to Zynga.

61.     These profits were obtained in violation of the Civil Remedy Statute for Recovery of Gambling Losses.

62.     These profits were a benefit conferred upon Apple by Class members when purchasing coins to wager on the Zynga Casino Apps.

63.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from the Zynga Casino Apps, Plaintiff and each Class member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Multistate Class and State Classes, respectfully request that the Court grant certification of the proposed Multistate Class and State Classes, including the designation of Plaintiff as the named representative of the Multistate

Class and her respective State Class, the appointment of the undersigned as Class Counsel, and the designation of any appropriate issue classes and/or subclasses, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in Plaintiff's favor and against Apple, as follows:

      A.     Injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

      B.     An award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined;

      C.     An award of statutory damages and punitive damages, as allowed by law in an amount to be determined;

      D.     An award of restitution or disgorgement, in an amount to be determined;

      E.     An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

      F.     Prejudgment interest on all amounts awarded; and

      G.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 16, 2021              Respectfully submitted,

                     By:      */s/ Daniel L. Warshaw*
                             DANIEL L. WARSHAW
                     Daniel L. Warshaw (Bar No. 185365)
                     **PEARSON, SIMON & WARSHAW, LLP**
                     15165 Ventura Boulevard, Suite 400
                     Sherman Oaks, CA 91403
                     Telephone: (818) 788-8300
                     Facsimile: (818) 788-8104
                     Email: dwarshaw@pswlaw.com

                     Hassan A. Zavareei (Bar No. 181547)
                     Andrea R. Gold*
                     **TYCKO & ZAVAREEI LLP**

1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
agold@tzlegal.com

Jeff Ostrow*
Jason H. Alperstein*
Kristen Lake Cardoso*
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email: ostrow@kolawyers.com
alperstein@kolawyers.com
cardoso@kolawyers.com

*Counsel for Plaintiff and the Proposed Class*

**Pro Hac Vice Applications Forthcoming*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

949472.1                                                                                                                      .

CLASS ACTION COMPLAINT